UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHERRI PETTIS, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| AMAZON.COM, INC., and WHOLE FOODS MARKET, INC., | |
| Defendants. | |

Sherri Pettis ("Plaintiff"), on behalf of herself and all others similarly situated, by her undersigned attorneys, against Amazon.com and Whole Foods Market, Inc., (collectively "Defendants"), alleges the following based upon personal knowledge as to herself and her own actions, and, as to all other matters, allege, upon information and belief and investigation of her counsel, as follows:

### I.     INTRODUCTION

1.     This action seeks to recover damages and injunctive relief for Defendants' continuing failure to disclose to consumers that certain Whole Foods herbs and spices, sold under its trade name of "365 By Whole Foods Market," including Defendants' Basil, Cumin, and Ground Ginger (the "Products"), contain (or risk containing) lead, arsenic, and cadmium ("Heavy Metals").

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

2.    A November 2021 report by Consumer Reports states that the offending herbs and spices, including the Products, "had high enough levels of arsenic, lead, and cadmium combined, on average, to pose a health concern for children when regularly consumed in typical servicing sizes.  Most raise concern for adults, too."

3.    Heavy Metals in foods pose a serious safety risk to consumers because they can cause cancer and serious and often irreversible damage to brain development as well as other serious health problems.

4.    As described more fully below, consumers who purchase the Products are injured by Defendants' acts and omissions concerning the presence (or risk) of Heavy Metals. No reasonable consumer would know, or have reason to know, that the Products contain (or risk containing) Heavy Metals. Worse, as companies across the industry have adopted methods to limit heavy metals in their herbs and spices, Defendants have stood idly by with a reckless disregard for their consumers' health and well-being.  As such, Plaintiff seek relief in this action individually and as a class action on behalf of all purchasers of the Products.

## II.    PARTIES

### Plaintiff

5.    Plaintiff Sherri Pettis is a resident and citizen of the State of Pennsylvania, residing in Pittsburgh, Pennsylvania. Plaintiff Pettis began purchasing the 365 by Whole Foods Market Ground Ginger in or about 2018 from a Whole Foods retail location in Pittsburgh, Pennsylvania. Her most recent purchase was in 2021 for $3.49 from that location.

6.    Prior to purchasing the Product, Plaintiff Pettis saw and relied upon the packaging of the Product.  Plaintiff Pettis believed she was purchasing quality and healthy spices that did not contain (or have a risk of containing) Heavy Metals. Had Defendants disclosed on the label that the Product contained (or risked containing) unsafe toxic Heavy Metals, Ms. Pettis would have been aware of that fact and would not have purchased the Product or would have paid less for it.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

7.     Ms. Pettis continues to desire to purchase the Product from Defendants. However, Ms. Pettis is unable to determine if the Product is actually safe.  Ms. Pettis understands that the composition of the Product may change over time.  But as long as Defendant continues to market its Product as safe, she will be unable to make informed decisions about whether to purchase Defendant's Product and will be unable to evaluate the different prices between Defendant's Product and competitor's products.  Ms. Pettis is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Product marketed, labeled, packaged and sold as a quality and healthy spice is, in fact, a safe and healthy spice.

**Defendants**

8.     Defendant Amazon.com, Inc. is a Delaware corporation with its corporate headquarters and principal place of business located in Seattle, Washington. In 2017, Defendant Amazon.com acquired Defendant Whole Foods for $13.7 billion.[1]

9.     Defendant Whole Foods is a Delaware corporation with its headquarters and principal place of business at 525 N Lamar Blvd, Austin, TX 78703. Defendant manufactures, markets, and sells herbs and spices under the Whole Foods 365 brand name throughout the United States. During the relevant period, Defendant controlled the manufacture, design, testing, packaging, labeling, marketing, advertising, promotion, distribution, and sales of its Products.  Defendant therefore had complete control over how to label its Products as to their contents. The Products are sold at Whole Foods brick and mortar locations, online, and on Amazon.com.

### III.     JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28

---

[1]*See* https://slate.com/business/2021/06/why-amazon-bought-whole-foods-groceries-online.html#:~:text=In%202017%2C%20Amazon%20entered%20the,purchase%20was%20a%20cataclysmic%20event (last accessed July 21, 2022).

CLASS ACTION COMPLAINT - 3

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  U.S.C. § 1332, at subsection (d), conferring federal jurisdiction over class actions where, as here:

2  (a) there are 100 or more members in the proposed classes; (b) some members of the proposed

3  classes have a different citizenship from Defendant; and (c) the claims of the proposed class

4  members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28

5  U.S.C. § 1332(d)(2) and (6).

6         11.    This Court has personal jurisdiction over Defendants because Defendant

7  Amazon.com, the parent company of Defendant Whole Foods, maintains its principal place of

8  business in this District.

9         12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant

10  Amazon.com is headquartered and has its principal place of business in this District, a

11  substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, and

12  Defendant conducts substantial business in this District.

13         13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial

14  part of the events or omissions giving rise to these claims occurred in, were directed to and/or

15  emanated from this District. Defendant Amazon.com resides within this judicial district and a

16  substantial part of the events giving rise to the claims alleged herein occurred within this

17  judicial district.

18                  **IV.    FACTUAL ALLEGATIONS**

19  **A.    Lead, Arsenic, and Cadmium Are Toxic**

20         14.    Lead, arsenic, and cadmium are heavy metals.  As described more fully below,

21  the harmful effects of heavy metals are well-documented, particularly on children.  Exposure

22  puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity

23  disorder), type 2 diabetes, and cancer, among other health issues.  Heavy metals also pose risks

24  to adults.  Even modest amounts of heavy metals can increase the risk of cancer, cognitive and

25  reproductive problems, and other adverse conditions.  As such, it is important to limit exposure.

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

15.   "No amount of lead is known to be safe."[2] Exposure to lead may cause anemia, weakness, and kidney and brain damage.[3] Lead can affect almost every organ and system in the body. Lead accumulates in the body over time, and can lead to health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death. Lead can also cross the fetal barrier during pregnancy, exposing the mother and developing fetus to serious risks, including reduced growth and premature birth. Lead exposure is also harmful to adults as more than 90 percent of the total body burden of lead is accumulated in the bones, where it is stored. Lead in bones may be released into the blood, re-exposing organ systems long after the original exposure.[4]

16.   Arsenic is also dangerous to humans. "Arsenic is ranked first among toxicants posing a significant potential threat to human health based on known or suspected toxicity."[5] Long term exposure is linked to cardiovascular disease. Arsenic can also cause bladder, lung, liver, and skin cancer, strokes, and diabetes. Recent studies have suggested that arsenic may cause IQ deficits in children and may be harmful to fetal development as "even low concentrations of arsenic impair neurological function[.]"[6] There is "essentially no safe level" of arsenic.[7]

---

[2]  *See* https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below-epa-limits-can-still-impact-your-health (last accessed August 8, 2022).
[3] Centers for Disease Control and Prevention, "Health Problems Caused by Lead," *The National Institute for Occupational Safety and Health (NIOSH)*, https://www.cdc.gov/niosh/topics/lead/health.html#:~:text=Exposure%20to%20high%20levels%20of,a%20developing%20baby's%20nervous%20system (last accessed August 8, 2022).
[4] State of New York Department of Health, "Lead Exposure in Adults: A Guide for Health Care Providers," https://www.health.ny.gov/publications/2584.pdf (last accessed August 8, 2022).
[5] Christina R. Tyler and Andrea M. Allan, "The Effects of Arsenic Exposure on Neurological and Cognitive Dysfunction in Human and Rodent Studies: A Review," *Curr Environ Health Rep*. 2014; 1(2): 132-147, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4026128/ (last accessed August 8, 2022).
[6] *Id.*
[7] *See* https://publicintegrity.org/environment/what-to-do-if-your-drinking-water-contains-arsenic/ (last accessed August 8, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

17.     Cadmium is similarly harmful. "[A]ny cadmium exposure should be avoided."[8] Exposure to cadmium may lead to damage to kidneys, lungs, and bones.[9] "Even relatively low chronic exposure can cause irreversible renal tubule damage, potentially progressing to glomerular damage and kidney failure" and "bone loss often is seen in concert with these effects."[10] This metal is also known to cause cancer and targets the body's cardiovascular, renal, gastrointestinal, neurological, reproductive, and respiratory systems.[11]

**B.     Whole Foods' Herbs & Spices Contain Toxic Arsenic, Lead, and Cadmium.**

18.     In November of 2021, Consumer Reports published a report titled "Your Herbs and Spices Might Contain Arsenic, Cadmium, and Lead."  Employing the Analysis for Arsenic, Cadmium, Lead, and Mercury by Triple Quadruple Inductively Coupled Plasma Mass Spectrometry (IC-QQQ-MS), With Collision Cell, Consumer Reports determined that each of the Products contains toxic Heavy Metals. Consumer Reports' samples were prepared and analyzed in accordance with the Association of Official Analytical Chemists (AOAC) Method 2015.01.

19.     Consumer Reports analyzed "126 individual products from national and private-label brands," including Whole Food's.[12]

20.     Consumer Reports determined that "[r]oughly one-third of the tested products, 40 in total, had high enough levels of arsenic, lead, and cadmium combined, on average, to pose a health concern for children when regularly consumed in typical serving sizes. Most raised concern for adults, too."[13]

21.     The authors cautioned that "just one serving—3/4 teaspoons or more—per day leaves little room for heavy metal exposure from other sources" including in "fruit juice, baby

---

[8] M. Nathaniel Mead, "Cadmium Confusion: Do Consumers Need Protection," *Environ Health Perspect*. 2010 Dec; 118(12): A528-A534, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed August 8, 2022).
[9] *See* Agency for Toxic Substances and Disease Registry, "ToxFAQs for Cadmium," Toxic Substances Portal, https://wwwn.cdc.gov/TSP/ToxFAQs/ToxFAQsDetails.aspx?faqid=47&toxid=15 (last accessed August 8, 2022).
[10] Mead, *supra* note 8.
[11] *See* Occupational Safety & Health, "Cadmium," https://www.osha.gov/cadmium (last accessed August 8, 2022).
[12] Lisa L. Gill, "Your Herbs and Spices Might Contain Arsenic, Cadmium, and Lead," *Consumer Reports* (Nov. 9, 2021), https://www.consumerreports.org/food-safety/your-herbs-and-spices-might-contain-arsenic-cadmium-and-lead/ (last accessed August 8, 2022).
[13] *Id.*

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

food, and rice[.]"[14] These latter food categories have also tested high for heavy metals and have been the subject of numerous lawsuits.

22.    With regards to the results, James E. Rogers, PhD, director of food safety and testing at Consumer Reports remarked that "[w]hen people think about heavy metals in their diet, if they do at all, it's probably the lead in their drinking water or arsenic in their children's fruit juices or cereals . . . But our tests show that dried herbs and spices can be a surprising, and worrisome, source for children and adults."[15]

23.    Concerning the source of the heavy metals in herbs and spices, Consumer Reports stated that heavy metals may get into food, "including herbs and spices, during manufacturing—from processing equipment or packaging[.]"[16]

24.    Along these lines, Consumer Reports determined that "it is possible for herb and spice companies to limit heavy metals in their products" as "[a]bout two-thirds of the spices [Consumer Reports] tested did not have concerning levels of heavy metals."[17]

25.    Yet, upon information and belief, Defendants fail to adequately test for Heavy Metals in its Products.

26.    Instead, Defendants chose to ignore the health of the consuming public in pursuit of profit.

C.    **The Presence (or Risk) of Toxic Heavy Metals in Whole Foods' Products Far Exceeds Expectations of Reasonable Consumers**

27.    According to Global Market Insights, "[t]he demand for spices and seasonings has increased in recent years owing to their varied nutritional benefits."[18] Indeed, "[m]ore Americans are considering the use of spices and herbs for medicinal and therapeutic/remedy

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] Global Market Insights, "North America Seasonings Market to Exceed $5bn by 2027," *Press Releases* (Oct. 22, 2021), https://www.gminsights.com/pressrelease/north-america-seasonings-market?utm_source=globenewswire.com&utm_medium=referral&utm_campaign=Paid_globenewswire (last accessed August 8, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

use, especially for various chronic conditions" as "[t]here is now ample evidence that spices and herbs possess antioxidant, anti-inflammatory, antitumorigenic, anticarcinogenic, and glucose- and cholesterol -lowering activities as well as properties that affect cognition and mood."[19] As such, the safety of herbs and spices that can be easily purchased to season such food, amongst others, is a material fact to consumers (such as Plaintiff and the Class members).

28.    Given the negative effects of toxic heavy metals (such as arsenic, lead, and cadmium) on child development and adult health, the presence of these substances in food is a material fact to reasonable consumers, including Plaintiff and members of the Class.

29.    Defendants know that the safety of their herbs and spices (as a general matter) is a material fact to reasonable consumers, as demonstrated below.

30.    As such, Defendants also know that the presence (or risk) of toxic Heavy Metals in their herbs and spices is a material fact to reasonable consumers, including Plaintiff and the Class members.

31.    A consumer survey confirms that purchasers of spices consider it important to know if there are Heavy Metals (or the risk of Heavy Metals) in the products even in small amounts.  Plaintiff's counsel conducted a nationwide survey of just over 500 adult consumers who bought spices, including Defendants' spices, within the past two years.[20]  The vast majority (approximately 94%) answered that the presence or risk of even a small amount of Heavy Metals in the spices would be either important or very important to their purchasing decisions.[21]

---

[19] T Alan Jiang, "Health Benefits of Culinary Herbs and Spices," *J AOAC Int*. 2019 Mar 1; 102(2): 395-411, 10.5740/jaoacint.18-0418 (last accessed August 8, 2022).

[20] The survey included 503 participants over the age of 18, 259 of whom were female, 242 of whom were male, and 2 of whom were non-binary.  Some 67 percent of the participants were from the following states, with a minimum of 3% (15 participants) each:  Arizona, California, Florida, Illinois, Maryland, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas and Washington.  The remaining approximately 33 percent, with a minimum of one participant each, were from the following states: Alabama, Alaska, Arkansas, Colorado, Connecticut, District of Columbia, Georgia, Hawaii, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Dakota, Oklahoma, Oregon, South Carolina, Tennessee, Utah, Virginia, West Virginia and Wisconsin.

[21] The question in the survey was as follows: "A November 2021 report of an investigation by Consumer Reports reveals that certain brands of particular herbs and spices contain heavy metals consisting of lead, arsenic, and/or

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

32.     Herbs and spices manufacturers (such as Defendants) hold a special position of public trust. Consumers believe that they would not sell products that are unsafe.

33.     Defendants knew that if the presence (or risk) of toxic Heavy Metals in their herbs and spices was disclosed to Plaintiff and the Class members, then Plaintiff and the Class members would be unwilling to purchase them or would pay less for them.

34.      In light of Defendants' knowledge that Plaintiff and the Class members would be unwilling to purchase the Products or would pay less for the Products if they knew that they contained (or risked containing) toxic Heavy Metals, Defendants intentionally and knowingly concealed this fact from Plaintiff and the Class members and did not disclose the presence (or risk) of these toxic Heavy Metals on the labels of the Products.

35.     Defendants knew or should have known that Plaintiff and the Class members would rely upon the packages of the Products and intended for them to do so but failed to disclose the presence (or risk) of Heavy Metals.

36.     Defendants knew or should have known that they owed consumers a duty of care to adequately test for Heavy Metals in the Products, which they failed to do.

37.     Additionally, Defendants knew or should have been aware that a reasonable consumer would consume the Products multiple times each day, and possibly multiple Products.  This leads to repeated exposure to the Heavy Metals.

38.     Defendants knew or should have known they could control the levels of Heavy Metals in the Products by properly monitoring the ingredients for Heavy Metals and adjusting any formulation to reduce or eliminate ingredients that contained or may contain higher levels of Heavy Metals.

---

cadmium.  Please select how important, if at all, would it be to your purchasing decision if the spice(s) you purchased contained, or risked containing, even a small amount of the heavy metals previously described?"  The response choices provided were as follows:  Not at all important; important; very important.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

39.     Prior to purchasing the Products, Plaintiff and the Class members were exposed to, saw, read, and understood Defendants' labels, and relied upon them in purchasing the Products, but Defendants failed to disclose the presence (or risk) of Heavy Metals.

40.     As a result of Defendants' concealment of the fact that the Products contained (or risked containing) toxic Heavy Metals, Plaintiff and the Class members reasonably believed that Defendants' Products were free from substances that would negatively affect children's development as well as their own health.

41.     In reliance upon Defendants' labels that contained material omissions, Plaintiff and the Class members purchased Defendants' Products.

42.     Had Plaintiff and the Class members known the truth—*i.e.*, that the Products contained (or risked containing) toxic Heavy Metals, rendering them unsafe for consumption by children and adults—they would not have been willing to purchase them or would have paid less for them.

43.     Therefore, as a direct and proximate result of Defendants' omissions concerning the Products, Plaintiff and the Class members purchased the Products.

44.     Plaintiff and the Class members were harmed in the form of the monies they paid for the Products which they would not otherwise have paid had they known the truth about the Products.  Since the presence (or risk) of toxic Heavy Metals in herbs and spices renders them unsafe for human consumption, the Products that Plaintiff and the Class members purchased are worthless or are worth less than Plaintiff and the Class paid for them.

45.     Defendants' label omissions at issue in this Complaint are put in context by Defendant Whole Foods' website, where Defendants prominently touts that they launched the "365 by Whole Foods Market" brand to offer "convenience and everyday low prices on natural and organic products that meet the company's industry-leading quality standards" in 2016.[22]

---

[22] *See* https://media.wholefoodsmarket.com/whole-foods-market-introduces-365-by-whole-foods-market-chain#:~:text=today%20announced%20the%20name%20of,company's%20industry%2Dleading%20quality%20standards (last accessed July 21, 2022).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

46.     On Defendant's website, it further claims: "Our purpose is to nourish people and the planet. We're a purpose-driven company that aims to set the standards of excellence for food retailers. Quality is a state of mind at Whole Foods Market."[23]

47.     In its "Core Values" it heralds that it sells "products with ingredients you can trust," and that its team vets its "products to make sure they meet our high standards by researching ingredients, reading labels and auditing sourcing practices — all to make shopping easier for you. Remember, if it doesn't meet our standards, we don't sell it."[24]

48.     The foregoing statements on the website demonstrate that Defendants know that reasonable consumers consider it important that the Products are pure, and high quality and thus safe and free from toxins such as the Heavy Metals.

49.     The Products' labels are materially deceptive, false and misleading given Defendants' material omission about the presence (or risk) of Heavy Metals as described above.

### FED. R. CIV. P. 9(b) ALLEGATIONS

50.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

51.     **WHO**: Defendants made material omissions of fact in their packaging of the Products by omitting the presence (or risk) of Heavy Metals.

52.     **WHAT**: Defendants' conduct was and continues to be fraudulent and deceptive because it has the effect of deceiving consumers into believing that the Products do not contain (or risk containing) Heavy Metals. Defendant omitted from Plaintiff and Class members that the Products contain (or risk containing) Heavy Metals. Defendants knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing

---

[23] *See* https://www.wholefoodsmarket.com/mission-values (last accessed August 8, 2022).
[24] *See* https://www.wholefoodsmarket.com/mission-values/core-values (last accessed August 8, 2022).

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   decisions. Yet, Defendants have omitted from the Products' labeling the fact that they contain

2   (or risk containing) Heavy Metals.

3       53.   **WHEN**: Defendants made material omissions detailed herein, that the Products

4   do contain (or risk containing) Heavy Metals, continuously throughout the applicable relevant

5   periods.

6       54.   **WHERE**: Defendants' omissions were made on the labeling and packaging of the

7   Products and were thus viewed by every purchaser, including Plaintiff and the Class, at the

8   point of sale in every transaction. The Products are sold worldwide in brick-and-mortar stores

9   and online stores nationwide.

10      55.   **HOW**: Defendants omitted from the Products' labeling the fact that they contain

11  (or risk containing) Heavy Metals. And as discussed in detail throughout this Complaint, Plaintiff

12  and Class members read and relied on Defendants' label omissions before purchasing the

13  Products.

14      56.   **WHY**: Defendants omitted from the Products' labeling the fact that they contain

15  (or risk containing) Heavy Metals for the express purpose of inducing Plaintiff and Class

16  members to purchase the Products at a substantial price premium or more than they would

17  have paid had they known the truth about the Products. As such, Defendants profited by selling

18  the Products to at least thousands of consumers throughout the nation, including Plaintiff and

19  the Class members.

20                          **CLASS ACTION ALLEGATIONS**

21      57.   Plaintiff brings this action individually and on behalf of all other persons similarly

22  situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on

23  the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings

24  this action and seeks certification of the following proposed class:

25          **Class**: All persons within the United States who purchased the
            Products during the fullest period of law.
26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

58.     Plaintiff also brings this action on behalf of the following State Subclass (the "Pennsylvania" Subclass"):

>    **Pennsylvania Subclass:** All persons who purchased the Products in the State of Pennsylvania during the fullest period of law.

59.     Excluded from the proposed Classes are the Defendants, and any entities in which the Defendants have controlling interest, the Defendants' agents, employees and their legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and all resellers of the Products.

60.     Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

61.     Plaintiff further reserves the right to amend the above class definition as appropriate after further investigation and discovery, including by seeking to certify a narrower multi-state class (or classes) in lieu of a nationwide class if appropriate.

62.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to tens of thousands. The number of members in the Classes is presently unknown to Plaintiff but may be verified by Defendants' records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

63.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

a.     whether the Products contain (or risk containing) toxic Heavy Metals;

b.     whether Defendants' conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

c.      whether the amount of toxic Heavy Metals in the Products is material to a reasonable consumer;

d.      whether Defendants had a duty to disclose that the Products contained (or risked containing) toxic Heavy Metals;

e.      whether Plaintiff and members of the Classes are entitled to injunctive and other equitable relief;

f.      whether Defendants failed to disclose material facts concerning the Products;

g.      whether Defendants' conduct was unfair and/or deceptive;

h.      whether Defendants have been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon Defendants by Plaintiff and the Class members;

i.      whether Defendants breached implied warranties to Plaintiff and the Class members;

j.      whether Defendants violated the State consumer protection and deceptive practice statutes invoked below and are entitled to damages and/or treble damages under such state statutes; and

k.      whether Plaintiff and the Class members have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

64.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** The claims of the named Plaintiff are typical of the claims of other Members of the Classes. All Members of the Classes were comparably injured by Defendants' conduct described above, and there are no defenses available to Defendants that are unique to Plaintiff or any particular members of the Classes.

65.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is adequate as a Class representative because her interests do not conflict with the interests of

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    other Members of the Classes; she has retained class counsel competent to prosecute class

2    actions and financially able to represent the Classes.

3        66.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**

4    Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the

5    other Members of the Classes, thereby making appropriate final injunctive relief and

6    declaratory relief, as described below, with respect to the Members of the Classes as a whole.

7    In particular, Plaintiff seeks to certify the Classes to enjoin Defendants from selling or otherwise

8    distributing spices until such time that Defendants can demonstrate to the Court's satisfaction

9    that its spices are accurately labeled.

10       67.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior

11   to any other means of adjudication for this controversy. It would be impracticable for Members

12   of the Classes to individually litigate their own claims against Defendants because the damages

13   suffered by Plaintiff and the Members of the Classes are relatively small compared to the cost

14   of individually litigating their claims. Individual litigation would create the potential for

15   inconsistent judgments and delay and expenses to the court system. A class action provides an

16   efficient means for adjudication with fewer management difficulties and comprehensive

17   supervision by a single court.

18                          **V.    CAUSES OF ACTION**

19
                                  **COUNT I**
20                           **UNJUST ENRICHMENT**
                      **(On Behalf of the Class and Subclasses)**
21

22       68.    Plaintiff incorporates by this reference the allegations contained in the preceding

23   paragraphs as if fully set forth herein.

24       69.    Plaintiff brings this claim individually and on behalf of the Class and in the

25   alternative on behalf of Plaintiff and the Pennsylvania Subclass.

26       70.    Plaintiff and the Class and Subclass members conferred a benefit on Defendants

27   in the form of the gross revenues Defendants derived from the money they paid to Defendants.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

71.     Defendants had an appreciation or knowledge of the benefit conferred on them by Plaintiff and the Class and Subclass members.

72.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and the proposed Class members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendants omitted that the Products contained (or risked containing) toxic Heavy Metals.  This caused injuries to Plaintiff and members of the proposed Classes because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

73.     Defendants accepted and retained the benefit in the amount of the gross revenues they derived from sales of the Products to Plaintiff and the Class and Subclass members.

74.     Defendants have thereby profited by retaining the benefit under circumstances which would make it unjust for Defendants to retain the benefit.

75.     Plaintiff and the Class and Subclass members are, therefore, entitled to restitution in the form of the revenues derived from Defendants' sale of the Products.

76.     As a direct and proximate result of Defendants' actions, Plaintiff and Class and Subclass members have suffered in an amount to be proven at trial.

**VI.     COUNT II**
**FRAUD**
**(On Behalf of the Class and Subclasses)**

77.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

78.     Plaintiff brings this claim individually and on behalf of the Class and in the alternative on behalf of Plaintiff and the Pennsylvania Subclass.

79.     Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

a. **WHO**: Defendants made material omissions of fact in their packaging of the Products by omitting the presence (or risk) of Heavy Metals.

b. **WHAT**: Defendants' conduct was and continues to be fraudulent and deceptive because it has the effect of deceiving consumers into believing that the Products do not contain (or risk containing) Heavy Metals. Defendants omitted from Plaintiff and Class members that the Products contain (or risk containing) Heavy Metals. Defendants knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendants have omitted from the Products' labeling the fact that they contain (or risk containing) Heavy Metals

c. **WHEN**: Defendants made material omissions detailed herein, including omitting that the Products do contain (or risk containing) Heavy Metals, continuously throughout the applicable relevant periods.

d. **WHERE**: Defendants' material omissions were made on the labeling and packaging of the Products and were thus viewed by every purchaser, including Plaintiff, at the point of sale in every transaction. The Products are sold worldwide in brick-and-mortar stores and online stores nationwide.

e. **HOW**: Defendants made material omissions on the Products' labeling by never revealing that the Products contain (or risk containing) Heavy Metals. And as discussed in detail throughout this Complaint, Plaintiff and Class members read and relied on Defendants' omissions before purchasing the Products.

CLASS ACTION COMPLAINT - 17

f.    **WHY**: Defendants omitted from the Products' labeling the fact that they contain (or risk containing) Heavy Metals for the express purpose of inducing Plaintiff and Class members to purchase the Products at a substantial price premium or more than they would have paid had they known the truth about the Products. As such, Defendants profited by selling the Products to at least thousands of consumers throughout the nation, including Plaintiff and the Class members.

80.    As alleged herein, Defendants made these material omissions in order to induce Plaintiff and Class members to purchase the Products.

81.    As alleged herein, Defendants knew the omissions regarding the Products were false and misleading but nevertheless made such omissions on the Products' labeling. In reliance on these omissions, Plaintiff and Class members were induced to, and did, pay monies to purchase the Products.

82.    Had Plaintiff and the Class members known the truth about the Products, they would not have purchased them or would have paid less for them.

83.    As a proximate result of the fraudulent conduct of Defendants, Plaintiff and Class members paid monies to Defendants, through their regular retail sales channels, to which Defendants are not entitled, and have been damaged in an amount to be proven at trial.

**VII.    COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On behalf of the Class and Subclasses)**

84.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

85.    Plaintiff brings this claim individually and on behalf of the Class and in the alternative on behalf of Plaintiff and the Pennsylvania Subclass.

86.    Defendants are merchants engaging in the sale of goods to Plaintiff and the Classes.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

87.     There was a sale of goods from Defendants to Plaintiff and the Classes.

88.     As set forth herein, Defendants manufactured and sold the Products, and prior to the time the Products were purchased by Plaintiff and the members of the Classes, impliedly warranted that the Products were of merchantable quality and fit for their ordinary use (consumption by consumers).

89.     Defendants impliedly warranted to retail buyers that the Products were merchantable in that they: (a) would pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used. Defendants breached these implied warranties because the Products were unsafe and contained (or risked containing) toxic Heavy Metals.  Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used, which is consumption by consumers.

90.     Plaintiff and the Class members purchased the Products in reliance upon Defendants' skill and judgment in properly packaging and labeling the Products.

91.     The Products were not altered by Plaintiff or the Class members.

92.     Defendants knew that the Products would be purchased and used without additional testing by Plaintiff and the Class members.

93.     Defendants were on notice of this breach as they were aware of the inclusion of Heavy Metals in the Products and based on the public investigation by Consumer Reports that showed the Products contain Heavy Metals.

94.     Privity is not required where, as here, Plaintiff is a third-party beneficiary of Defendants' contracts with wholesalers or retail sellers and relied on Defendants' packaging in making their purchases.  Plaintiff and members of the Classes are third-party beneficiaries because the Products passed into commerce with warranties that were designed for the benefit of the end-user and not for the benefit of the wholesaler or retailer.

95.     Even if privity is required, Plaintiff is in privity with Defendants by purchasing the Product directly from Defendants.

CLASS ACTION COMPLAINT - 19

96.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and the Class members have been injured and harmed because they would not have purchased the Products or would have paid less for them if they knew the truth about the Products, namely, that they contained (or risked containing) toxic Heavy Metals.

97.     On July 25, 2022, Plaintiff, through counsel, provided notice to Defendants, apprising Defendants of their breach of warranties. Defendants have yet to remedy their breaches. Moreover, Defendants were put on notice of their breaches via *Sauceda, et al v. Amazon.com, Inc.*, 22-cv-00338 (W.D. WA) – a related case filed on March 22, 20222.

98.     Plaintiff, on behalf of herself and the members of the Classes, seek actual damages for Defendants' failure to deliver goods that conform to its implied warranties and resulting breach.

## VIII.     COUNT IV
### PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73, Pa. Cons. Stat. Ann. §§ 2-101, *et seq*.

99.     Plaintiff incorporates by reference and realleges each and every allegation contained in the above, as though fully set forth herein.

100.    Plaintiff brings this claim against each Defendant, individually and on behalf of the Pennsylvania Subclass.

101.    At all times mentioned herein, Defendants engaged in "trade" or "commerce" in Pennsylvania, as defined by 73 Pa. Cons. Stat. Ann. § 201-2(3), in that they advertised, offered for sale, and sold goods primarily for personal, family, or household purposes, and advertised, solicited, offered for sale, and sold "property, "article[s]," "commodit[ies]," or "thing[s] of value" in Pennsylvania.

102.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTCPL"), 73 Pa. Cons. Stat. Ann. § 201-3 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful."

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

103.     For the reasons described herein, Defendants violated and continue to violate the UTCPL by engaging in there herein described unconscionable, deceptive, unfair acts or practices prescribed by UTCPL §§ 201-1, et seq.  Defendants' acts and practices, including their material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

104.     Defendants repeatedly advertised on the labels and packaging of the Products, on their website, among other items that the Products were safe and fit for human consumption.

105.     Defendants failed to disclose material information that the Products were unsafe and unfit for human consumption and that the Products actually contain Heavy Metals.

106.     Defendants' omissions were material because they were likely to deceive reasonable consumers to induce them to buy the Products without being aware that they were unsafe and unfit for human consumption.  As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff and members of the Classes suffered damages by purchasing the Products because they would not have purchased the Products or would have purchased them at a lesser price had they known the truth.

107.     Defendants' deceptive trade practices caused injury in fact and actual damages to Plaintiff and members of the Class in the form of the loss or diminishment of value of the Products that Plaintiff and Class members purchased, which allowed Defendants to profit at the expense of Plaintiff and Class members.

108.     The injuries to Plaintiff and members of the Class were to legally protected interests.

109.     The gravity of the harm of Defendants' actions is significant and there is no corresponding benefit to consumers of such conduct.

110.     Plaintiff and members of the Classes seek relief for the injuries they have suffered as a result of Defendants' unfair and deceptive acts and practices, as provided by 73

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   Pa. Cons. Stat. Ann. § 201-9.2 and applicable law.

2                                    **PRAYER FOR RELIEF**

3          WHEREFORE, Plaintiff, on behalf of herself and other members of the proposed Class,

4   prays for judgment and relief on all of the legal claims as follows:

5          A.      That the Court certify the Class and Subclasses under Rule 23 of the Federal

6   Rules of Civil Procedure and appoint Plaintiff as Class and Subclass Representative and her

7   attorneys as Class Counsel to represent the members of the Class and Subclass;

8          B.      That the Court declare that Defendants' conduct violates the statutes referenced

9   herein;

10         C.      That the Court preliminarily and permanently enjoin Defendants from

11  conducting business through the unlawful, unfair, or fraudulent business acts or practices,

12  untrue, and misleading labeling and marketing and other violations of law described in this

13  Complaint;

14         D.      That the Court order preliminary and injunctive relief requiring Defendants to

15  disclose that the Products contain toxic Heavy Metals;

16         E.      That the Court order Defendants to implement whatever measures are

17  necessary to remedy the unlawful, unfair, or fraudulent business acts or practices, untrue and

18  misleading advertising, and other violations of law described in this Complaint;

19         F.      That the Court order Defendants to notify every individual and/or business who

20  purchased the Products of the pendency of the claims in this action to give such individuals and

21  businesses an opportunity to obtain restitution from Defendants;

22         G.      That the Court award Plaintiff all damages accordingly to law;

23         H.      That the Court grant Plaintiff's reasonable attorneys' fees and costs; and

24         I.      That the Court grant such other and further relief as may be just and proper.

25                                  **DEMAND FOR JURY TRIAL**

26         Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all

27  issues in this action so triable of right.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

CLASS ACTION COMPLAINT - 22

1    RESPECTFULLY SUBMITTED AND DATED this 10th day of August, 2022.

2                                    TERRELL MARSHALL LAW GROUP PLLC

3                                    By: /s/Beth E. Terrell, WSBA #26759
                                         Beth E. Terrell, WSBA #26759
4                                        Email: bterrell@terrellmarshall.com

5

6                                    By: /s/Jennifer Rust Murray, WSBA #36983
                                         Jennifer Rust Murray, WSBA #36983
7                                        Email: jmurray@terrellmarshall.com
                                         936 North 34th Street, Suite 300
8                                        Seattle, Washington 98103
                                         Telephone: (206) 816-6603
9                                        Facsimile: (206) 319-5450

10

11                                       Jonathan Shub*
                                         Email: jshub@shublawyers.com
12                                       Kevin Laukaitis*
                                         Email: klaukaitis@shublawyers.com
13                                       SHUB LAW FIRM LLC
                                         134 Kings Highway E., 2nd Floor
14                                       Haddonfield, New Jersey 08033
                                         Telephone: (856) 772-7200
15                                       Facsimile: (856) 210-9088

16

17                                       Gary E. Mason*
                                         Email: gmason@masonllp.com
18                                       Danielle Perry*
                                         Email: dperry@masonllp.com
19                                       MASON LLP
                                         5101 Wisconsin Avenue NW, Suite 305
20                                       Washington, DC 20016
                                         Telephone: (202) 640-1168
21                                       Facsimile: (202) 429-2294

22

23

24

25

26

27

CLASS ACTION COMPLAINT - 23

L. Timothy Fisher*
Email: ltfisher@bursor.com
Sean L. Litteral
Email: sllitteral@bursor.com
BURSOR & FISHER, P.A.
1990 North California Blvd, Suite 940
Walnut Creek, California 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700

Lori G. Feldman*
Email: lfeldman@4-justice.com
Email: eservice@4-justice.com
GEORGE GESTEN MCDONALD, PLLC
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
Telephone: (833) 346-3587
Facsimile: (888) 421-4173

David J. George
Email: dgeorge@4-justice.com
Brittany L. Brown
Email: bbrown@4-justice.com
Email: eservice@4-justice.com
GEORGE GESTEN MCDONALD, PLLC
9897 Lake Worth Road, Suite #302
Lake Worth, Florida 33467
Telephone: (561) 232-6002
Facsimile: (888) 421-4173

Janine L. Pollack
Email: jpollack@calcaterrapollack.com
CALCATERRA POLLACK LLP
1140 Avenue of the Americas, 9th Floor
New York, New York 10036
Telephone: (212) 899-1765
Facsimile: (332) 206-2073

*pro hac vice to be filed

Attorneys for the Plaintiff and the Putative Classes

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com